**ANGELES BROKERAGE CO.**

v.

**CARLO PANNO FRUIT CO., Limited.**

No. 13436.

United States Court of Appeals
Ninth Circuit.

March 17, 1954.

**342**

Ernest W. Pitney, Newell & Chester, Los Angeles, Cal., for appellant.

Patrick D. Horgan, Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the District Court for the Southern District of California entered December 3, 1951, which reversed a reparation order of the Secretary of Agriculture, herein Department or Secretary, on February 2, 1949. (P.A.C.A. Docket No. 4779.) This order required appellee, "Panno Fruit Company, Ltd.," hereafter called Panno, to pay to appellant Angeles Brokerage Company, herein Angeles, reparation in the sum of $4381.35 with interest from November 1, 1946, until paid. The proceedings before the Secretary were rested upon the provisions of the Perishable Agricultural Commodities Act, Title 7, U.S.C.A., Section 499a et seq., herein the Act, or P.A.C.A.

Angeles initiated these proceedings under the Act for recovery of reparations against Panno by filing a formal complaint on April 21, 1947. Thereafter, a formal hearing on the Angeles complaint was had before a Judicial Officer of the Secretary,[1] and on or about February 2, 1949, the Secretary made the reparation order which became the subject of Panno's appeal to the lower court. On March 4, 1949, under authority of Section 7 of the Act, 7 U.S.C.A. § 499g (c), Panno filed in the lower court his Notice of Appeal from the Secretary's order along with his Petition and the record required by the Act. On December 1, 1949, he filed an amended Petition with the court pursuant to leave first had and obtained.[2]

---

1. The lower court found that Carlo Panno was doing business under the name of Carlo Panno Fruit Company, Ltd. The Hearing (Judicial) Officer representing the Secretary made and entered his preliminary statement, findings of fact, conclusions and order which were adopted by the Secretary. A formal finding therein was that Carlo Panno was an individual, who at the time of the transaction involved in the proceeding, was engaged in business as the Carlo Panno Fruit Company, Ltd., at Pico, California, and at that time was licensed under the Act.

The complainant before the Secretary was William P. Pann, an individual trading as the Angeles Brokerage Company, and operating in Los Angeles, California. In the lower court Pann testified that he had been in the brokerage business for more than sixty years. The purchase transaction here involved occurred in southern California within the judicial district wherein the lower court sits.

2. In his original *Petition* on appeal to the lower court on March 4, 1949, Panno was erroneously described therein as a corporation. The amended Petition filed later by Panno with leave of court practically copied his original petition, the only change here pertinent was the omission from the amended Petition of the allegation that Panno was a corporation. This omission caused the amended Petition to conform to the finding of the Judicial Officer that Panno was doing business as an individual (see footnote 1). Under the provisions of Title 7 U.S.C.A., § 499g(c), the petition and pleadings certified by the secretary upon which his de-

The important facts out of which this controversy arose may be summarized as follows:

On October 10, 1946, Angeles agreed to buy from Panno, and Panno agreed to sell, two carloads of muscat grapes at $130 per ton, less $50 per car, (a broker's fee for Angeles) shipment to be made by Panno to Angeles at Chicago, Illinois, at the expense of Angeles. Two railroad cars containing the grapes were shipped from Escondido, California by Panno on the evening of October 14, 1946. The lower court found that the 14th had been agreed upon by the parties as the shipping date. The grapes were not loaded in cars in accordance with certain private railroad tariff provisions in that (only) every other layer of boxes containing grapes was "stripped" [3] with two strips, whereas the said tariff regulations required each layer to be double stripped. The lower court found that the parties entered into no agreement, express or implied, that said grapes would be loaded in accordance with the mentioned tariff provisions.

On October 16, 1946 the two cars were diverted by Angeles to Kansas City, Missouri. On the same day at Los Angeles, California, Angeles received from Panno bills of lading covering the two carloads of grapes and gave Panno a check covering payment in full for the grapes. Panno cashed the check. Before the two cars left Escondido, Angeles had, through a Los Angeles broker, sold the grapes to the Fadler Company of Kansas City and billed Fadler for them. On arrival at Kansas City, Fadler rejected the grapes when they were inspected on October 21, 1946, the inspection revealing that some of the grapes were crushed and decayed.

On October 21, 1946, Angeles advised Panno by telegram of the Fadler rejection and that both cars were being "turned back" to Panno, "per agreement." On the next day, Angeles further advised Panno by telegram that the rejected cars "must be diverted" that day. Again on the same day Angeles advised Panno by telegram that the grapes would not have been accepted (by Angeles) without the promise of Panno to repossess the grapes and refund the purchase price if decay caused trouble. The telegram stated that the grapes had been rejected as decayed, and demanded that Panno carry out his agreement and refund the purchase price.

Within 48 hours after rejection of the grapes by Fadler, Angeles "diverted" the two cars to Angeles at Chicago, Illinois. They were then "turned over" to the Los Angeles brokerage concern which had handled the sale to Fadler. The grapes were later sold by a distributor in Philadelphia in the first six days of November, 1946. The amount received for them was $2738.15. The freight charges and costs of sale amounted to $2821.34. The difference, or $83.19, was paid by the Los Angeles broker and later paid by Angeles. The Secretary refused to allow a loss of profits which Angeles claimed it would have realized on resale of the grapes at Kansas City.

Angeles presents in summary three propositions which it considers to be "the principal issues" involved in this appeal.

The first is a challenge to the jurisdiction of the lower court to entertain the appeal from the reparation order of the Secretary of Agriculture. The jurisdiction of this court to review the lower

cision was made "shall upon filing in the district court constitute the pleadings upon which * * * trial de novo shall proceed subject to any amendment [to the pleadings] allowed in that court * * *." This section further provides specifically that such a suit in the district court at the instance of appellant shall be a trial de novo and shall proceed in all respects like other civil suits for damages except that the findings of fact

and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated.

3. Testimony before the lower court indicated that "stripping" is the placing of 2-inch boards between each layer of boxes (lugs) in the car. Panno testified at trial that "stripping" each layer or tier of boxes was the general custom and practice.

court's judgment is not challenged. See Rule 18(b) of this Court.

The other two issues presented relate to what we regard as questions of fact which are open for determination anew in the lower court, and in the posture of this case, the presence or absence of any controlling question of law in relation thereto would depend upon how the court resolved such fact questions.

The second question thus posed is "whether there is any evidence to overcome the finding of the Secretary that the grapes were not in suitable shipping conditions when shipped."

The third question is "whether Angeles waived the implied warranty of suitable shipping condition." 7 C.F.R. 4624(j).[4] (And see footnote 6.)

Conforming to the requirement of rule 18(d) of this Court, Angeles has specified (only) one error of the lower court upon which it relies, to wit, "that the evidence is insufficient to sustain the findings of fact, conclusions of law and the judgment" of the lower court.

### The Issue of Jurisdiction

Angeles challenges the jurisdiction of the lower court over the appeal of Panno and rests this claim on the contention that under 7 U.S.C.A. § 499g(c) "a party" who conceives himself to be "adversely affected" by the Secretary's reparation order must, if he desires to appeal to the proper district court from such an order, follow the procedure as to the time of filing his Notice of Appeal, which time the statute prescribes as "thirty days from and after *the date* of such order". On this point Angeles says that to come within the right of appeal provision and enjoy its benefits it must appear that the appealing party was "a party" in and to the proceeding before the Secretary who was "adversely affected" by the Secretary's reparation award.

Angeles cites American Fruit Growers v. Lewis D. Goldstein, etc., D.C., 78 F. Supp. 309 to buttress the jurisdictional argument, and asserts that Panno's *Petition* on appeal to the lower court (filed along with his *Notice of Appeal)* carried a statement that Panno "is a corporation, organized and existing under the laws of the State of California and as such doing business in its corporate name of Carlo Panno Fruit Company, Ltd." A *corporation* of that name, says Angeles, was not "a party" in the proceeding before the Secretary, hence no valid appeal was taken by Panno. Thus, it would be impossible for this "corporation" to have been "a party adversely affected" under section 499g(c). The lower court was therefore without jurisdiction to entertain a purported appeal by a corporation which was never in the case.

4. Certain provisions of Regulations made pursuant to the Act, being a part of Regulation 46.24, and relied upon by Angeles, read as follows:

"(i) 'F.o.b.' (for example, 'f.o.b. Laredo, Tex.', or even 'f.o.b. California') means that the produce quoted or sold is to be placed free on board the boat, car or other agency of the through land transportation at shipping point in suitable shipping condition (see definitions of 'suitable shipping condition,' paragraphs (j) and (k) of this section), and that the buyer assumes all risk of damage and delay in transit not caused by the shipper, irrespective of how the shipment is billed. The buyer shall have the right of inspection at destination before the goods are paid for, but only for the purpose of determining that the produce shipped *complied with the terms of the contract or order* at time of shipment, subject to the provisions covering suitable shipping condition. Such right of inspection shall not convey or imply any right of rejection by the buyer because of any loss, damage, deterioration, or change which has occurred in transit.

"(j) 'Suitable shipping condition,' in relation to direct shipments, means that the commodity, at time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the destination specified in the contract of sale.

"(k) 'Suitable shipping condition,' in connection with reconsigned, rolling, or tramp cars, means that the commodity, at the time of sale, meets the requirements of this phrase as defined in paragraph (j) of this section, relating to direct shipments." (Emphasis ours.)

It is clear from the record of proceedings before the Secretary (and Angeles agrees) that Panno there made abundantly plain his status as a person operating an individually owned business; that is to say, that he was then doing business solely *as an individual* under the name of Carlo Panno Fruit Company, Ltd. In fact, Angeles has carefully emphasized in its brief on this appeal that the Preliminary Statement, Findings of Fact, Conclusions and Order of the Secretary here involved "affirmatively show that * * * Panno *is an individual* who at the time of the transaction involved, was engaged in business *as the Carlo Panno Fruit Company, Ltd.*" and thus was "the party adversely affected." (See footnote 1.) (Emphasis ours.) On this kind of a record in the lower court, the reference in Panno's *Petition* that his business was incorporated, was obviously a pure inadvertence which could be, and was, properly corrected by an amendment which merely deleted an allegation which the record plainly indicated to be untrue. A reference to the applicable statute (see footnote 2) will indicate that the lower court had authority to authorize such an amendment to make the Petition speak the truth. We find no error in the order permitting the amendment of the *Petition*, for as amended, it left unchanged all of the material issues present in the proceeding before the Secretary.[5]

In our view no prejudice to Angeles could or did result from the allowance of the noted amendment. In light of this fact it would serve no useful purpose to analyze the cases cited by the parties which are thought to have some possible bearing on the problem. We find them to be without force in that regard.

However, we note a further claim of Angeles that "*no notice of appeal* was ever filed by Carlo Panno, the only person adversely affected by the order." This claim rests on the fact that Panno's "notice" recited that "the Carlo Panno Fruit Company, Ltd." was a party adversely affected. This formal notice of appeal was signed in the name of the Fruit Company "*by Carlo Panno, appellant.*" We think this contention is without merit. Angeles received sufficient notice under the law to be fully advised that Panno, *the individual,* (who was described as such in the proceedings before the Secretary) was appealing to the district court.

### The Fact Issues

We have noted above the two remaining "issues" presented by Angeles which clearly relate only to fact issues. In the trial de novo provided by the statute, the evidence, testimony and claims of the parties with respect to these fact issues were again fully presented in the lower court and there subjected to a new appraisal and evaluation of probative weight by the district judge. As to these issues the statute leaves no doubt that the district judge is empowered to determine from the record before him whether the prima-facie case resting on the findings of fact and order of the Secretary was adequately supported or was overcome and/or discredited by the evidence and testimony adduced in his court. (See footnote 2.) In view of the mandate of the statute we conclude that the findings of fact of the trial judge are entitled to the weight which would normally be given to them in an ordinary civil suit for damages in the lower court. Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A.

We will not burden this opinion by setting out all of the many findings of fact of the district judge. It is sufficient to say that they are comprehensive and cover every fact issue of any consequence. Particularly pertinent to the two fact "issues" emphasized by Angeles were findings which, inter alia, set forth that Panno had caused uniform straight bills of lading to be prepared on the shipment of the two cars of grapes and de-

---

5. There was no evidence in the record that Panno had ever operated his business under corporate form. In this posture of the case the amendment did not introduce a new party into the proceeding nor did it inject a new and/or independent cause of action or claim for relief.

livered these documents to Angeles and was then and there paid in full for the grapes; that Angeles had a reasonable opportunity to inspect the grapes or to have them inspected at the point of shipment; that the parties agreed that inspection would be made by Angeles, but by statements and conduct, Angeles waived inspection of the grapes; that the parties by their statements and conduct agreed that the sale of the grapes was complete at the time Panno delivered the bills of lading to Angeles and was paid for the grapes; that both parties were experienced in the sale of grapes and that there was no express warranty or any warranty that the grapes would grade "85% U.S.–1," nor was there any other warranty as to the quality and condition of the grapes; that the grapes were represented (by Panno) only as muscat or juice grapes, and the grapes he sold to Angeles were not of a kind, quality and grade inferior to that called for in the contract of purchase.

Further findings were that allegations in the original complaint of Angeles before the Department of Agriculture that Panno represented the grades as 85% U.S.–1, that they were the best quality he had shipped, and that in the event of any trouble he would "take the grapes back and refund the money," on which representation Angeles paid for the grapes, were "not true and none of them is true"; that while the grapes were not loaded in accordance with private railroad tariff provisions requiring each layer (of grape boxes) to be double "stripped," the parties entered into no agreement, express or implied, that the grapes would be loaded in accord with these private tariff provisions; that the evidence does not show that the "stripping" and loading of the cars caused "abnormal deterioration in transit," nor does the evidence reflect as a matter of fact or of law that there was abnormal deterioration of the grapes in transit.[6]

In a blend of what appears to be findings and conclusions of law, the trial judge concluded that Angeles, by statements and conduct, waived the provisions of the "suitable shipping conditions rule" (Regulations promulgated by the Secretary, under Section 499o of Title 7. See text in footnote 4) and the sale herein was complete and final on October 16, 1946; that the fruit which was appropriated to respondent's (Angeles) order was of good and merchantable quality; that Angeles was estopped after October 16, 1946 from asserting other and different alleged defects of the fruit than decay and that there was no sufficient evidence of decay at the original destination, Kansas City, for the conclusion of the Department of Agriculture that there was a violation of the suitable shipping condition rule, even if the same applied here; that the conclusion of the Department that the grapes were overripe when loaded is unsupported in fact and in law; that the conclusion of Department that Panno herein failed to deliver the grapes in suitable shipping condition is unsupported in fact and in law; that the conclusion of the Department that Angeles should be allowed reparation in the

---

6. The second and third fact "issues" advanced by Angeles relate to the matter of "suitable shipping conditions" of the grapes. The argument in phrased in three contentions (1) there was an implied warranty that the grapes were in suitable shipping condition when placed on board cars at Escondido; (2) that there is no evidence to overcome the Secretary's finding that Panno breached his implied warranty of suitable shipping conditions, and (3) that Angeles did not waive the implied warranty of suitable shipping conditions.

The arguments of Angeles rest upon the language of the Act reading as follows:

"It shall be unlawful * * * for any dealer to reject or fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold or contracted to be brought, sold, or consigned in interstate or foreign commerce by such dealer". Title 7 U.S.C.A. § 499b (2). (Emphasis ours.)

"If any commission merchant, dealer, or broker violates any provision of Section 2 [part relied on quoted above] he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation." 7 U.S.C.A. § 499e.

amount of $4381.35, or in any other amount, is unsupported in fact and in law. A further conclusion was that the reparation order be reversed and that Angeles take nothing; and that Panno was entitled to judgment.

Judgment in harmony with the findings and conclusions was entered, and this appeal followed.

Insofar as we may consider the facts as disclosed by the entire record, it seems clear that Angeles claimed before the Secretary that the *quality* of the grapes was misrepresented by Panno, hence the breach of *an express warranty*, a theory which appears to have been relied on in the lower court. As we have indicated, supra, the trial judge found that there was no express warranty, or any other warranty, as to quality and condition.

The Secretary points out that the record before him indicates that the parties contemplated inspection and acceptance at the loading point, adding the comment that this "would eliminate the suitable shipping condition rule." In any event, Angeles also asserts a claimed *breach of an implied warranty* of suitable shipping conditions, this under the Regulations (see footnote 4), and urges that it may be *deduced* that the grapes were overripe when shipped. On this issue the trial judge found squarely to the contrary, and further found that when shipped the grapes were "of good and merchantable quality," and that "there was no sufficient evidence of decay at the original destination * * * for the conclusion of the Department that there was a violation of the suitable shipping condition rule."

It is not our duty to reweigh the facts upon which the trial judge rested his findings. They disposed of the pertinent and controlling fact questions, and from our examination of the record we are unable to conclude that the findings were without support in the evidence or that his appraisal of the evidence before him reveals that a mistake has been committed.

The judgment is affirmed.